Bland, Chancellor.
This case having been submitted on the bill and answer alone without argument, the proceedings were read and considered.
The whole matter in controversy turns upon what may be deemed the true construction of the last clause in the section set forth in the defendant’s answer of the act by which this institution has been incorporated. The seventeenth section of that act declares, that £it would greatly tend to promote the agricultural and manufacturing interests if this bank should be authorized to make loans on more extended principles than have heretofore been adopted by similar institutions in this state;’ and then proceeds to enact, that this bank shall be authorized to open cash accounts, and make loans on a more than usually liberal mode, as therein prescribed ; provided they obtain such reasonable personal or landed security as they may require.
*396 There is nothing in this section which directly relates to the transfer of the stock of the institution; but it manifests the enlarged spirit of accommodation in which its affairs were proposed to be conducted, and the liberal manner in which money might be obtained from it. Loans were to be made upon reasonable personal or landed security; and the directors were to be clothed with ample power to lend upon those terms. -. Considering this authority to make loans upon more extended principles, it is obvious, that according to the spirit of its charter, the institution should not only be authorized to require reasonable security in the first instance, but that it should also be allowed to lay hold of every -just means of obtaining satisfaction from its litigious or delinquent debtors. This, I am satisfied, was' the true intention' and s,ole object of this provision of the twentieth section, of the act of its incorporation as set forth in the defendant’s answer. ’ It was intended to give to the bank a mortgage or lien on its stock held by that class of its debtors and. nothing more. (b)
' If, as is alleged by the answer, the debt must be first paid, before the body politic can be allowed to tránsfer any stock so held; Or the president ’and directors are .bound, in behalf of'the •company, to -retain the stock until the debt is actually and fully paid, the very end in view, as is demonstrable from this case, may be defeated; and the debt may never be paid or collected. Here it is alleged by the administrator, and not denied, that he has not a sufficiency .of assets to pay all; he is riot therefore bound tp pay the entire of any, one debt; nor indeed is he allowed to apply the assets in satisfaction of any one debt exclusively; or in any other manner than in due proportion to all.; and consequently, the.'condition on which alone this stock can be . transferred, as the bank •interprets' this clause of its charter, never can be complied with. Or suppose the debtor himself to be living, but insolvent and utterly destitute-of the means of satisfying the claim, then, according to the position of these defendants, no transfer could be m'ade, and the stock standing in the name of the insolvent, with its accumulating dividends, must be locked up for eyer, dead ánd useless to every one. ■ • ¡
Rejecting, therefore, those constructions of this clause which lead inevitably to the grossest injustice, I consider it as intended merely to give to the bank an additional security, to the valué of *397 the stock so held, against its delinquent debtor. The security, which arises by operation of that clause out of such a state of things, must be considered as a lien upon, or pledge of the stock of the debtor to the bank, who must be permitted to stand or proceed as a mortgagee in all respects whatever, (c) Considering the bank as a mortgagee of this stock, it might, as in all similar cases, without a bill to foreclose, on giving notice to the debtor, have proceeded to sell at public auction; and have applied the proceeds of sale in satisfaction of its claim, and paid over the surplus, if any. (d) Or if, after the bank had had the full benefit of the security, which had thus accrued to it in virtue of this clause, by a sale of the stock of its delinquent debtor, and it should turn out, that the proceeds of such sale were not sufficient to satisfy its whole claim, principal,.interest and costs; then it might have sued for and recovered the balance of the debtor, if .living; or, as in this instance have come in, for the amount so left unpaid, with the other creditors for a due proportion of the assets of its deceased debtor, (e)
But although the bank might have sold this stock without a bill to foreclose, yetas it has hitherto and still does refuse to do so, I see-no just reason why it should not now be ordered to be sold, to enable this plaintiff to settle up the estate of. his intestate, and to distribute the asset? in due proportion among the general creditors of the deceased; considering the bank as. one of them only for so much, if any, as shall remain unpaid after this stock, with the dividends thereon declared and retained by it, have been so applied toward the satisfaction of its claim. I shall, therefore, direct this stock to be sold for this purpose, and transferred to the purchaser accordingly; and also, that the dividends which may have been declared before the day of sale, and which have been retained, shall be, in like manner, applied towards the discharge of this claim of the bank.
The amount of the debt due to the bank from the estate of the intestate is not specified in the bill or in the answer, nor is it stated what dividends have been declared on the stock; these I presume are oversights, of which it is not the intention of either party to take any advantage. Therefore, let the pleadings be corrected in these particulars, and a decree be prepared accordingly.
*398 Immediately after this, the pleadings were, by mutual consent, amended as suggested, a decree was prepared, and the case was again submitted.
16th March, 1830.
Bland, Chancellor.
Decreed, that the defendants give credit to the complainant, on account of the judgment in the proceedings mentioned, for the several amounts stated, in the paper marked D, as of the dates of the several dividends due to the complainant; and also, with such other dividends as may accrue on the stock before the sale thereof, as herein after decreed. And it is further Decreed, that the shares of stock in the bill mentioned be sold, and that Somerville Pinkney be, and he is hereby appointed trustee to make the said sale, &c. He shall then proceed to sell the said shares of stock to the highest bidder for cash, to be paid on the day of sale or ratification thereof by the Chancellor, giving at least ten days notice by advertisement, in one of the newspapers published in the city of Annapolis, of the time, place, manner, and terms of sale, &c. And upon the ratification of said sale and payment of the whole purchase money, and not before, the trustee shall in the usual form transfer to the purchaser or purchasers the shares of stock to him, her, or them sold, &c.
After which the stock was sold as directed, upon which an account was stated by the auditor, which was confirmed on the 3d of June, 1830, leaving a balance of $3,316 65 still due to the defendants.

 Child v. Hudson’s Bay Company, 2 P. Will. 207

 Union Bank v. Laird, 2 Wheat. 390.

 Fowel Mortg. 962.

 Powel Mortg. 1001, 1081.